**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| JAVIER BENITEZ, | Case No. 3:24-CV-00088-CLB |
| Plaintiff, | **ORDER**[1] |
| v. | [ECF No. 51] |
| CITY OF RENO, *et al.*, | |
| Defendants. | |

This case involves a civil rights action filed by Plaintiff Javier Benitez ("Benitez") against Defendant Michael Frady ("Frady"). Currently pending before the Court is Frady's motion for summary judgment. (ECF Nos. 51, 52). Benitez opposed the motion, (ECF No. 56), and Frady replied, (ECF No. 58). For the reasons discussed below, Frady's motion, (ECF No. 51), is granted.

**I.    BACKGROUND**

    **A.    Procedural History**

On February 22, 2024, Plaintiff Benitez initiated this action by filing an application to proceed *in forma pauperis* along with a *pro se* civil rights complaint, (ECF Nos. 3, 3-1). On March 5, 2024, this Court screened the complaint pursuant to 28 U.S.C. § 1915A, recommending: (1) the excessive force during arrest claim proceed against Defendant Reno Police Department ("RPD") Officer Frady; (2) the municipality liability claim against Defendants City of Reno and RPD be dismissed with leave to amend; and (3) the false imprisonment claim be dismissed without prejudice and without leave to amend. (ECF No. 8.) On April 2, 2024, the District Court adopted the report and recommendation, ordering that if Benitez failed to file an amended complaint within 30 days, the action

---

[1] On December 16, 2024, this case was referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 34.)

would proceed on the excessive force claim against Frady, and the claims against the City of Reno and the Reno Police Department and the false imprisonment claim would be dismissed with prejudice. (ECF No. 9.) Benitez did not file an amended complaint or request an extension of time to do so, and thus the case proceeded as to the Fourth Amendment excessive force claim against Frady, only. (ECF No. 11.)

Following discovery, on June 2, 2025, Frady filed the instant motion for summary judgment arguing he is entitled to summary judgment as a matter of law because the undisputed evidence shows his conduct was objectively reasonable in light of the facts and circumstances of the arrest, and alternatively, even if his conduct was not objectively reasonable, he is entitled to qualified immunity. (ECF No. 51.)

**B.  Factual Background re: Summary Judgment**

In his complaint, Benitez alleges the following: On June 10, 2023, while effectuating an arrest of Benitez, Defendant Frady and numerous other Doe RPD Officers used excessive force by pointing guns at Benitez's head, when he had his hands up and posed no threat and was "not the suspect." (ECF No. 3-1 at 3.) Benitez alleges when the officers pointed their guns at him, it caused him to suffer various mental and emotional injuries, including anxiety, PTSD, and panic attacks. (*Id.*)

According to the undisputed evidence submitted by Defendant, on June 10, 2023, while Frady was on patrol duty with the RPD, he assisted in responding to a call received by the University of Nevada, Reno ("UNR") police department about a report of shots being fired in the Gateway Parking Garage. (ECF No. 51-1 at 2; ECF No. 51-2.) Information in the initial call indicated a Black male adult in his thirties, who was approximately 5'11 and wearing a white t-shirt with dark pants, was seen running from the scene and had placed something in the front of his pants. (ECF No. 51-1 at 2; ECF No. 51-2; ECF No. 51-3.) Frady was in the area of University Way and 7th Street when he observed a male similarly matching the above description, but with poofy hair, a white T-shirt, and blue jeans. (ECF No. 51-1; ECF No. 51-2.) Frady continued to just observe this male from that location. (*Id.*) An update in the call from UNR police indicated the male

they were looking for had on a white T-shirt, blue jeans, and poofy hair, which matched the observed subject who later was determined to be Benitez. (ECF No. 51-1 at 2; ECF No. 51-2; ECF No. 51-3.)

Frady then approached Benitez and activated the lights on his marked patrol vehicle. (ECF No. 51-1; ECF No. 51-2.) Frady identified himself as police and told Benitez to stop, but he continued walking away. (*Id.*) At that point, Frady drew his gun and put Benitez at gunpoint due to the threat of a firearm in the call. (ECF No. 51-1 at 2; ECF No. 51-2; ECF No. 51-3.)

Reno Police Sergeant Anthony Della ("Sgt. Della") arrived on scene shortly thereafter and also put Benitez at gunpoint. (ECF No. 51-1; ECF No. 51-3.) Reno Police Officer Zsante Smith ("Officer Smith") arrived on scene while Sgt. Della and Frady were holding Benitez at gunpoint as seen on Officer Smith's body worn camera. (ECF No. 51-1; ECF No. 51-3; ECF No. 52 (video at timestamp 22:01:11).) Officer Smith initially had his gun drawn as he approached Benitez, but then he put his gun away and pulled out his taser as he came around to stand on Frady's right side. (ECF No. 51-1; ECF No. 52 (video at timestamp 22:01:15–22:01:42).) On the body cam video, Officer Smith was standing on the right side of Frady holding the yellow taser, and Sgt. Della was standing on the left side of Frady holding a gun. (ECF No. 51-1; ECF No. 52 (video at timestamp 22:02:17).)

To the best of Frady's knowledge and recollection, and as seen on Officer Smith's body worn camera, Sgt. Della and Frady were the only two officers holding a gun at Benitez. (ECF No. 51-1; ECF No. 52 (video at timestamp 22:01:12–22:02:33).) Benitez was repeatedly told to "lay down on the ground," "lay down on your stomach right now," "all the way flat on your stomach," "put your arms out to the side," and "look towards the wall," but he did not comply for nearly a full minute. (ECF No. 51-1; ECF No. 52 (video, at timestamp 22:01:36–22:02:33).) Sgt. Della and Frady put their guns away as soon as Benitez complied and was placed in handcuffs. (ECF No. 51-1; ECF No. 52 (video at timestamp 22:02:40).)

3

Benitez was ultimately determined by a witness to not be related to the incident, as the subject in question was the same build but darker complexioned with hair that was in dreads. (ECF No. 51-2 at 3.) However, the description of "dreads" was not received by dispatch until 22:46:42, more than 43 minutes after Benitez was detained. (ECF No. 51-3.) Due to Benitez's failure to identify himself during the investigation, Benitez was arrested for resisting a public officer for the failure to identify. Ultimately, he was transported and booked in the Washoe County Sheriff's Office. (ECF No. 51-2 at 4.)

## II.   LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law applicable to the claim determines which facts are material. *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of the suit can preclude summary judgment, and factual disputes that are irrelevant are not material. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248.

The parties subject to a motion for summary judgment must: (1) cite facts from the record, including but not limited to depositions, documents, and declarations, and then (2) "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Documents submitted during summary judgment must be authenticated, and if only personal knowledge authenticates a document (i.e., even a review of the contents of the document would not prove that it is authentic), an affidavit attesting to its authenticity must be attached to the submitted document. *Las Vegas Sands, LLC v. Neheme*, 632 F.3d 526, 532-33 (9th Cir. 2011). Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish the absence or presence of a genuine dispute. *Soremekun*

*v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984. However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the nonmoving party's claim or claims; or (2) submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its burden for summary judgment, the nonmoving party is not required to provide evidentiary materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477 U.S. at 322-23.

Where the moving party has met its burden, however, the burden shifts to the nonmoving party to establish that a genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, (1986). The nonmoving must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation omitted). In other words, the nonmoving party may not simply rely upon the allegations or denials of its pleadings; rather, they must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. *See* Fed. R. Civ. P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11. This burden is "not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence." *Id.* (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d

5

*v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984. However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the nonmoving party's claim or claims; or (2) submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its burden for summary judgment, the nonmoving party is not required to provide evidentiary materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477 U.S. at 322-23.

Where the moving party has met its burden, however, the burden shifts to the nonmoving party to establish that a genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, (1986). The nonmoving must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation omitted). In other words, the nonmoving party may not simply rely upon the allegations or denials of its pleadings; rather, they must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. *See* Fed. R. Civ. P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11. This burden is "not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence." *Id.* (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d

376, 387 (9th Cir. 2010)). The non-moving party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Pac. Gulf Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere assertions and "metaphysical doubt as to the material facts" will not defeat a properly supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

When a *pro se* litigant opposes summary judgment, his or her contentions in motions and pleadings may be considered as evidence to meet the non-party's burden to the extent: (1) contents of the document are based on personal knowledge, (2) they set forth facts that would be admissible into evidence, and (3) the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

Upon the parties meeting their respective burdens for the motion for summary judgment, the court determines whether reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015). The court may consider evidence in the record not cited by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3). Nevertheless, the court will view the cited records before it and will not mine the record for triable issues of fact. *Oracle Corp. Sec. Litig.*, 627 F.3d at 386 (if a nonmoving party does not make nor provide support for a possible objection, the court will likewise not consider it).

### III.   DISCUSSION

Frady argues he is entitled to summary judgment as a matter of law because the undisputed evidence shows his conduct was objectively reasonable in light of the facts and circumstances that confronted him on June 10, 2023. (ECF No. 51.) The Court agrees.

Under the Fourth Amendment, an officer's use of force must be "objectively reasonable in light of the facts and circumstances confronting them." *Williamson v. City*

*of Nat'l City*, 23 F.4th 1146, 1151 (9th Cir. 2022) (citation and internal quotation marks omitted); *Graham v. Connor*, 490 U.S. 386, 397 (1989). In determining the reasonableness of a use of force, the court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake." *Miller v. Clark Cnty.*, 340 F.3d 959, 964 (9th Cir. 2003) (quotations omitted).

Courts may decide reasonableness as a matter of law if, "in resolving all factual disputes in favor of the plaintiff, the officer's force was objectively reasonable under the circumstances." *Jackson v. City of Bremerton*, 268 F.3d 646, 651 n.1 (9th Cir. 2001) (internal quotation omitted). The reasonableness inquiry looks at all the relevant objective facts and circumstances that confronted the arresting officers "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1058 (9th Cir. 2003) (quotation omitted). Additionally, the reasonableness analysis must consider the fact that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.*

*Graham v. Connor* provides the framework that governs the reasonableness inquiry. 490 U.S. 386. Resolving all genuine disputes of material fact in Plaintiff's favor, *Graham* requires that courts consider "the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted" and "the government's interest in the use of force." *Seidner v. de Vries*, 39 F.4th 591, 596 (9th Cir. 2022), (quoting *Williamson*, 23 F.4th at 1151). Courts balances these two factors to determine whether the government's use of force was excessive. *See id.*

To gauge the type and amount of force used, courts assess both "the risk of harm and the actual harm experienced." *Nelson v. City of Davis*, 685 F.3d 867, 879 (9th Cir. 2012). The greater the risk of harm and the actual harm involved, the greater the governmental interest must be to justify the use of force. *See Headwaters Forest Def. v.*

*County of Humboldt*, 276 F.3d 1125, 1130 (9th Cir. 2002).

The government's interest in the use of force differs depending on: (1) the severity of the crime; (2) whether the suspect posed an immediate threat to the safety of the officers or others; and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Williamson*, 23 F.4th at 1153; *see Graham*, 490 U.S. at 396–97. "[T]hese factors are not exclusive; they must be considered under the totality of circumstances, including whether 'less intrusive alternatives' were available to law enforcement and whether the suspect was given 'proper warnings' before force was used." *Seidner*, 39 F.4th at 599 (quoting *Rice v. Morehouse*, 989 F.3d 1112, 1121–22 (9th Cir. 2022)). The "immediate threat" factor is the most important. *Isayeva v. Sacramento Sheriff's Dept.*, 872 F.3d 938, 947 (9th Cir. 2017) (quoting *S.B. v. County of San Diego*, 864 F.3d 1010, 1013 (9th Cir. 2017)).

As discussed above, the undisputed evidence shows the following occurred on June 10, 2023: while Frady was on patrol duty with the RPD, he assisted in responding to a call received by the UNR police department about a report of shots being fired in the Gateway Parking Garage. Information in the initial call indicated a Black male adult in his thirties, who was approximately 5'11 and wearing a white t-shirt with dark pants, was seen running from the scene and had placed something in the front of his pants. Frady was in the area of University Way and 7th Street when he observed a male similarly matching the above description, but with poofy hair, a white T-shirt, and blue jeans. Frady continued to just observe this male from that location. An update in the call from UNR police indicated the male they were looking for had on a white T-shirt, blue jeans, and poofy hair, which matched the observed subject who later was determined to be Benitez.

Based on the matching description, Frady approached Benitez and activated the lights on his marked patrol vehicle. Frady identified himself as police and told Benitez to stop, but Benitez continued walking away. At that point, Frady drew his gun and put Benitez at gunpoint due to the threat of a firearm in the call. Shortly thereafter, Sgt. Della arrived on scene and also put Benitez at gunpoint.

Benitez was repeatedly told to "lay down on the ground," "lay down on your stomach right now," "all the way flat on your stomach," "put your arms out to the side," and "look towards the wall," but he did not comply for nearly a full minute. Sgt. Della and Frady put their guns away as soon as Benitez complied and was placed in handcuffs.

Benitez was ultimately determined by a witness to not be related to the incident, as the subject in question was the same build but darker complexioned with dreads. However, the description of "dreads" was not received by dispatch until 22:46:42, more than 43 minutes after Benitez was detained.

Viewing the facts in the light most favorable to Benitez, a reasonable jury could find pointing a loaded gun to constitute a high risk of harm. *See Espinosa v. City & County of San Francisco*, 598 F.3d 528, 537-538 (9th Cir. 2010) ("pointing a loaded gun at a suspect, employing the threat of deadly force, is use of a high level of force.") In this case, because Benitez was held at gun point for a short period of time and was not physically injured, the actual harm involved was low.

However, the government interests at stake were high. First, the crime—discharging a weapon in an occupied public space—was severe. Discharging a weapon in this manner is a felony offense under Nevada law. *See* NRS 202.285 (discharging a firearm at an occupied building is a category B felony carrying one-to-10-year term in prison and/or up to $5,000 fine). Second, Benitez closely matched the description of the suspect who was reported to have committed a shooting and then fled with "something"—which could be a firearm—in his pants. Thus, based on the undisputed evidence in this case, at the moment Frady and the other officers encountered Benitez, they had reason to believe Benitez was armed and dangerous and posed an immediate threat to the safety of the responding officers, as well as to the public at large. *See George v. Morris*, 736 F.3d 829, 838 (9th Cir. 2013) ("If the person is armed—or reasonably suspected of being armed—a furtive movement, harrowing gesture, or serious verbal threat might create an immediate threat."). Finally, instead of complying with Frady's request to stop, Benitez ignored his commands, necessitating the officers

to escalate the interaction, i.e., to draw their weapons.

The undisputed evidence set forth above demonstrates that Frady's use of force on June 10, 2023 was objectively reasonable as a matter of law. He held Benitez at gunpoint for only as long as necessary to detain and handcuff him, which enabled officers to safely pat him down and confirm he did not have a firearm on him. Ninth Circuit case law is clear, pointing a gun at a suspect is not categorically out of bounds. *Hopson v. Alexander*, 71 F.4th 692, 704-05 (9th Cir. 2023) (citing *Alexander v. County of Los Angeles*, 64 F.3d 1315, 1320 (9th Cir. 1995) ("It is well settled that when an officer reasonably believes force is necessary to protect his own safety or the safety of the public, measures used to restrain individuals, *such as stopping them at gunpoint and handcuffing them*, are reasonable." (emphasis added)).

Balancing the gravity of the force used against the governmental interests at stake, no reasonable jury could find Frady used excessive force during the short period at which Benitez was held at gunpoint.

Even if a reasonable jury could find this level force to be unreasonable, Benitez has not pointed to clearly established law beyond general excessive force principles that would have put the officers on notice that pulling a gun under the circumstances was unconstitutional. To the contrary, the Ninth Circuit has found officers did not violate clearly established law in pointing guns at robbery suspects while detaining them, even though it turned out to be a case of mistaken identity. *See Alexander*, 64 F.3d at 1318, 1320. Thus, because Benitez has not identified any authority and the Court cannot find an authority that places the unconstitutionality of Frady's conduct "beyond debate" in the circumstances he confronted, the Court finds Frady did not violate clearly established law when he pointed his gun at Benitez. *See District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). Thus, Frady's motion for summary judgment is granted.

## IV.   CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and

determines they do not warrant discussion as they do not affect the outcome of the issues before the Court.

For the reasons stated above, **IT IS ORDERED** that Frady's motion for summary judgment, (ECF No. 51), is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court **ENTER JUDGMENT** accordingly and **CLOSE** this case.

**DATED**: July 15, 2025

_____
**UNITED STATES MAGISTRATE JUDGE**